Michele C. TAYLOR, Plaintiff-Appellant,

v.

ALABAMA INTERTRIBAL COUNCIL TITLE IV J.T.P.A., Charlotte Stewart, Board Member, et al., Defendants-Appellees.

No. 00-12280.

United States Court of Appeals,

Eleventh Circuit.

July 9, 2001.

Appeal from the United States District Court for the Middle District of Alabama. (No. 98-00136-CV-D-N), Ira De Ment, Judge.

Before CARNES and MARCUS, Circuit Judges, and PROPST[1], District Judge.

PER CURIAM:

Michele C. Taylor, acting *pro se,* appeals from the district court order entering summary judgment on her 42 U.S.C. § 1981 employment discrimination claim in favor of her employer, the Alabama Intertribal Council Title IV J.T.P.A. ("AIC") and two AIC Board Members, Charlotte Stewart and Ron Etheridge. In accordance with *Goodman v. Lukens Steel Company,* the district court ruled that Taylor's § 1981 claim was time barred under Alabama's two-year statute of limitations for personal injury actions. *See* 482 U.S. 656, 660-62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (explaining that since § 1981 claims have no statute of limitations courts should apply the statute of limitations available under state law in their jurisdictions for personal injury actions). Taylor's primary argument on appeal is that the statute of limitations on her § 1981 claim has not run because the claim is governed by the four year statute of limitations under 28 U.S.C. § 1658.[2] We need not address whether the statute of limitations under § 1658 applies to Taylor's § 1981 claim,

---

[1]Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

[2]28 U.S.C. § 1658 provides that all claims created by federal statute subsequent to 1990 that do not contain a statute of limitations are governed by the default four year statute of limitations created under § 1658. In this Circuit, one court has held that the Congressional amendments made to § 1981 in 1991, allowing plaintiffs to bring employment discrimination claims under this section, were sufficient to establish that § 1981 employment discrimination claims have a four year statute of limitations period. *Nealey v. Univ. Health Serv. Inc.,* 114 F.Supp.2d 1358, 1364-66 (S.D.Ga.2000). Another court has held that § 1658 does not apply to any § 1981 claim because the statute was passed in 1870, and § 1658 only applies to newly created statutes passed after 1990. *Lane v. Ogden Entertainment Inc.,* 13 F.Supp.2d 1261, 1268-70 (M.D.Ala.1998). Instead, the district court explained that § 1981 employment discrimination claims are governed by each jurisdiction's state law statute of limitations for personal injury actions, as explained in *Goodman,* 482 U.S. at 660, 107 S.Ct. 2617.

because we conclude that Taylor's action must be dismissed as barred by Indian sovereign immunity.[3]

We review a district court order granting summary judgment *de novo, Raney v. Vinson Guard Serv. Inc.,* 120 F.3d 1192, 1196 (11th Cir.1997), and when necessary will *sua sponte* conduct an inquiry into whether a party enjoys Indian sovereign immunity, as this consideration determines whether a court has jurisdiction to hear an action. *See Suarez Corp. Industries v. McGraw,* 125 F.3d 222, 227 (4th Cir.1997) (recognizing obligation of *sua sponte* review on sovereign immunity issues); *Sanderlin v. Seminole Tribe of Florida,* 243 F.3d 1282, 1285 (11th Cir.2001) (recognizing sovereign immunity inquiry as part of subject matter jurisdiction analysis).

Indian sovereign immunity is a unique legal concept and, unlike state Eleventh Amendment immunity, it can be more freely limited by Congressional enactment. *Sanderlin,* 243 F.3d at 1285. Therefore, as we recognized in *Florida Paraplegic Association Incorporated v. Miccosukee Tribe of Indians of Florida,* a Congressional statute of general applicability presumptively applies to Indian tribes absent some clear indication that Congress did not intend for tribes to be subject to the legislation. 166 F.3d 1126 (11th Cir.1999) (citing *Federal Power Comm'n v. Tuscarora Indian Nation,* 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960)). Review of the cases on Indian sovereign immunity shows that courts will only rule that a generally applicable statute does not govern an Indian tribe when the statute would "(1) abrogate rights guaranteed under an Indian treaty, (2) interfere with purely intramural matters touching [on an Indian tribe's] exclusive rights of self-government, or (3) contradict Congress's intent."[4] *Id.* The AIC has not suggested that any treaty right is at issue in this case; therefore, we review Taylor's § 1981 claim to determine whether permitting the AIC to be sued under this statute would run contrary to Congress's intent, or would infringe on the tribal organization's "exclusive rights of self-governance in purely intramural matters." *Id.*

We begin with an inquiry into Congressional intent. Section 1981 was passed in 1870, in the aftermath of the Civil War; therefore, it does not address the conception of Indian sovereign immunity that is recognized in modern precedent. Also, Congress's 1991 amendments to § 1981 and the amendments'

---

[3]Inexplicably, counsel for the tribe never raised the defense of Indian sovereign immunity in any of the earlier proceedings in this case, despite the fact that the EEOC indicated that immunity applied, and countless precedents indicate that Indian sovereign immunity bars race discrimination in employment claims for intramural tribal employment decisions.

[4]An entity entitled to Indian sovereignty may waive this privilege and consent to suit. However, this consideration has no bearing on the instant case, as there is no indication in the record that AIC has waived its immunity.

legislative history fail to address this issue. However, we need not adopt an overly technical understanding of the claim at issue in this case, as Taylor's § 1981 claim, in substance, is a disparate treatment employment discrimination claim and, in its discussions of Title VII, Congress has explicitly indicated that it does not intend for Indian tribes to be subject to disparate treatment employment discrimination suits for Indian tribe-based employment. *See, e.g., Dawavendewa v. Salt River Project Agric. Improvement and Power Dist.,* 154 F.3d 1117 (9th Cir.1998) (recognizing same); *Pink v. Modoc Indian Health Project,* 157 F.3d 1185, 1188 (9th Cir.1998) (same). Specifically, Congress expressly exempts Indian tribes from the definition of employer under Title VII, and indicates that Indian tribal preference programs cannot serve as the basis for Title VII race discrimination claims. *See* 42 U.S.C. § 2000e-(b) & e-(b)(2)(i). In our view, it would be wholly illogical to allow plaintiffs to circumvent the Title VII bar against race discrimination claims based on a tribe's Indian employment preference programs simply by allowing a plaintiff to style his claim as § 1981 suit. *Ferrill v. The Parker Group,* 168 F.3d 468 (11th Cir.1999) (explaining that § 1981 race based claims of disparate treatment are governed by the same analysis used for Title VII disparate treatment claims). *See Wardle v. Ute Indian Tribe,* 623 F.2d 670, 673 (10th Cir.1980) (dismissing § 1981 and § 1985 claim against tribal employer based on same facts as Title VII claim). Thus, we conclude that permitting Taylor to bring a § 1981 claim against AIC for race discrimination would contradict Congressional intent.

Moreover, Taylor's employment discrimination claim against the tribe by is also precluded by Indian tribes' strong interest in self government. In *Morton v. Mancari,* 417 U.S. 535, 551-555, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), the Supreme Court recognized that an Indian tribe's strong interest in internal self government prevents parties from raising employment discrimination claims alleging injury from the use of Indian preferences for jobs administrating Indian affairs. Specifically, in *Morton,* petitioner brought a due process claim charging the Bureau of Indian Affairs (BIA) with race discrimination for its policies preferring Indians for BIA positions. The Court explained that the BIA's Indian preference program did not constitute race discrimination because it was a political program, designed to promote Indian self governance. *Id.* Since that time, courts have held that, absent some evidence of Congress's "clear and plain intent" to abrogate a tribe's sovereign immunity, they will not interpret federal employment discrimination statutes to cover Indian tribes' employment decisions for tribal or reservation based positions concerning purely tribal governance and administrative matters. *EEOC v. Fond du Lac Heavy Equip. and Constr. Co.,* 986 F.2d 246 (8th Cir.1993) (holding that tribe member did not have an ADEA claim against a tribe employer because the ADEA did not

show Congress's "clear and unmistakable intent" to abrogate the tribe's sovereign immunity from suit in this area of internal tribal relations); *EEOC v. Cherokee Nation,* 871 F.2d 937 (10th Cir.1989) (holding same in context of non-tribe member's ADEA suit). As explained above, nothing in § 1981 supports the proposition that Congress intended to abrogate tribes' immunity and permit private parties to bring employment discrimination claims against them for intramural tribal employment decisions.

We recognize that the AIC is an intertribal council as opposed to a "tribe," and this difference might give some pause in extending to the AIC the same protection against employment discrimination actions as provided to tribes. However, several courts have recognized that Congress intended to protect group activities between tribes as well as individual tribes when it created the Indian tribe exceptions under Title VII. *See Pink v. Modoc Indian Health Project,* 157 F.3d 1185 (9th Cir.1998) (holding that corporation whose Board was composed of two representative tribe members constituted tribe under Title VII tribal exemption); *Dille v. Council of Energy Resource Tribes,* 801 F.2d 373 (10th Cir.1986)(holding that council composed of thirty nine Indian tribes which managed energy resources entitled to Title VII tribal exemption).[5] AIC is an intertribal consortium, with a Board dominated by tribal chiefs and tribe members, organized to promote business opportunities for and between the tribes; as such, we conclude that it is entitled to the same protections as a tribe itself.

Also, we recognize that the complaint names two AIC board members as individuals, and therefore might be interpreted to raise claims under *Ex Parte Young* against these individuals. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida,* 63 F.3d 1030, 1050 (11th Cir.1995) (permitting *Ex Parte Young* claim against members of tribal organization). However, a review of the claim shows that the action has been brought against the board members in their official capacity, as there is no question that the AIC is the real party of interest in this action: any judgment paid by the individual board members would be drawn from the AIC fisc, and any equitable and injunctive relief provided (such as reinstatement) would conflict with the AIC's right to hire persons in accordance with its desire to promote Indian self government. *cf. ACLU v. Finch,* 638 F.2d 1336, 1341-42 (5th Cir.1981) (discussing principles in context of state sovereign

---

[5]Also persuasive, the EEOC and the district court concluded that Taylor had no claim against the AIC under Title VII because the AIC was entitled to the tribal employer exceptions under Title VII.

immunity).[6]

Therefore, we conclude that Taylor's claim against the AIC, and the individual board members should have been dismissed, as Indian sovereign immunity protects them from claims alleging race discrimination against non-Indian employees in favor of Indian employees when the employment concerns tribal self governance, reservation administration and other intramural Indian matters.

AFFIRMED.

---

[6]In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.