**Myrna MALATERRE, Carol Belgarde, and Lonnie Thompson, Plaintiffs,**

v.

**AMERIND RISK MANAGEMENT, Defendant.**

No. A4–04–088.

United States District Court, D. North Dakota, Northwestern Division.

June 20, 2005.

Thomas A. Dickson, Dickson Law Office, Bismarck, ND, for Plaintiffs.

Ronald A. Hodge, Hodge Law Firm, P.C., Bismarck, ND, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is American Risk Management's Motion to Dismiss filed on December 8, 2004. The Plaintiffs have filed a response opposing dismissal. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

On October 19, 2002, Stacey Bruce, Ruth Poitra, and Lonnie Thompson were guests in a house being leased from the Turtle Mountain Housing Authority located on the Turtle Mountain Indian Reservation.

On that date, the house was destroyed by a fire, killing Stacey Bruce and Ruth Poitra, and seriously injuring Lonnie Thompson. *See* Complaint, ¶¶ 10, 14–17.

On or about January 23, 2003, Myrna Malaterre, the mother of Stacey Bruce, Carol Belgarde, the mother of Ruth Poitra, and Lonnie Thompson filed a negligence action in Turtle Mountain Tribal Court against the Turtle Mountain Housing Authority.[1] The complaint was later amended to include Amerind Risk Management (Amerind), as a defendant. Amerind provides insurance coverage to the Turtle Mountain Housing Authority. The tribal court lawsuit is still pending and motions to dismiss have been filed by the defendants.

On July 1, 2004, the Plaintiffs filed an action against Amerind Risk Management in the federal District Court of North Dakota. The Plaintiffs seek a declaratory judgment regarding whether insurance coverage exists under the Amerind insurance policy. *See* Complaint, ¶ 23.

## II. LEGAL DISCUSSION

Amerind's motion to dismiss is predicated upon Rule 12(b)[2] of the Federal Rules of Civil Procedure. Specifically, Amerind contends that dismissal is appropriate under the tribal exhaustion doctrine and on the basis of sovereign immunity.

### A. DECLARATORY JUDGMENT ACT

The Plaintiffs seek declaratory relief under the Declaratory Judgment Act codified at 28 U.S.C. § 2201. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts

---

1. The Plaintiffs are all enrolled members of the Turtle Mountain Band of Chippewa Indians. *See* Complaint, ¶¶ 1–2, 7.

2. Amerind cites Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, which relate to lack of subject matter jurisdiction and lack of personal jurisdiction, respectively.

unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). To that end, the Act specifically provides that a court *"may* declare the rights and other legal relations of any interested party seeking such declaration, ..." 28 U.S.C. § 2201(a) (emphasis added). The Act has been "repeatedly characterized" by the United States Supreme Court as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton,* 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214. (citations omitted). As stated by the United States Supreme Court, "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* at 288, 115 S.Ct. 2137. Ultimately, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287, 115 S.Ct. 2137. Any willingness on the Court's behalf to entertain such relief in this case would yield to the applicability of the tribal exhaustion doctrine. *See Gaming World International, Ltd. v. White Earth Band of Chippewa,* 317 F.3d 840, 849 (8th Cir.2003) ("The issue of tribal exhaustion is a threshold one because it determines the appropriate forum.").[3]

**B. TRIBAL EXHAUSTION DOCTRINE**

 It is well-established that principles of comity require that tribal-court remedies *must* be exhausted before a federal district court should consider relief in a civil case regarding tribal-related activities on reservation land. *Krempel v. Prairie Island Indian Community,* 125 F.3d 621, 622 (8th Cir.1997) (citing *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412 (8th Cir. 1996)). Stated differently, "[t]he tribal exhaustion doctrine holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." *Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority,* 207 F.3d 21, 31 (1st Cir. 2000) (citations omitted). The purpose of the doctrine has been explained by the United States Supreme Court as follows:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

---

**3.** It has been established in the Eighth Circuit that tribal exhaustion precedes the tribal immunity inquiry. *See Davis v. Mille Lacs Band of Chippewa Indians,* 193 F.3d 990, 992 (8th Cir.1999). As one court explained, "The Eighth Circuit has held that a district court should begin this phase of its inquiry by addressing exhaustion and, if it determines that

tribal remedies must be exhausted, give the tribal court the first crack at considering the bona fides of the sovereign immunity defense." *Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority,* 207 F.3d 21, 28 (1st Cir.2000). The court will follow such an approach.

We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal basis for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine his own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*National Farmers Union,* 471 U.S. 845, 855–56, 105 S.Ct. 2447, 85 L.Ed.2d 818. Exhaustion is "especially appropriate" when tribal members or tribal entities are involved in a dispute arising on the reservation, and questions of tribal law are raised. *See Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412, 1420 (8th Cir.1996) ("In this case many of the parties are Tribal entities or members and the dispute arises from Tribal governmental activity involving a project located within the borders of the reservation. Under these facts, exhaustion of tribal remedies is especially appropriate."); *Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294, 1300 (8th Cir.1994); *United States v. Turtle Mountain Housing Authority,* 816 F.2d 1273, 1276 (8th Cir.1987) ("These facts tend to demonstrate that this is a purely internal tribal controversy, which the tribal court is uniquely situated to resolve."); *Weeks v. Oglala Sioux Housing Authority,* 797 F.2d 668, 673 (8th Cir.1986) ("The facts here show that this contract dispute arose on the reservation and raises questions of tribal law interpretation within the province of the tribal court.").

■ Exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts. *LaPlante,* 480 U.S. 9, 17, 107 S.Ct. 971, 94 L.Ed.2d 10. In short, "[t]he tribal exhaustion doctrine is based on 'a policy of supporting self-government and self-determination,'" and although the rule is prudential rather than jurisdictional, "[e]xhaustion is mandatory ... when a case fits within the policy."[4] *Gaming World International, Ltd. v. White Earth Band of Chippewa,* 317 F.3d 840, 849 (8th Cir. 2003) (citing *LaPlante,* 480 U.S. 9, 20 n. 14, 107 S.Ct. 971, 94 L.Ed.2d 10; *National Farmers Union,* 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818; *Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294, 1300 (8th Cir.1994); *Burlington N. R.R. Co. v. Crow Tribal Council,* 940 F.2d 1239, 1245 (9th Cir.1991)).

■ Although the criminal jurisdiction of tribal courts is subject to substantial

---

**4.** As noted by the United States Supreme Court and the Eighth Circuit Court of Appeals "[e]xhaustion is not required if an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, if the action is patently violative of express jurisdictional prohibitions, or if exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *DeMent v. Oglala Sioux Tribal Court,* 874 F.2d 510, 516 (8th Cir.1989) (citing *National Farmers Union,* 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)). Neither the parties, nor the Court find any of these concerns relevant with respect to this case.

federal limitation, *see Oliphant v. Suquamish Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), their civil jurisdiction is not so restricted. *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987)(citing *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 854–55, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). However, as a general rule, "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." *Strate v. A–1 Contractors,* 520 U.S. 438, 445, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (citing *Oliphant,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209; *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)). As the United States Supreme Court explained, " 'the inherent sovereign powers of an Indian tribe'—those powers a tribe enjoys apart from express provision by treaty or statute—'do not extend to the activities of nonmembers of the tribe.' " *Id.* at 445–46, 117 S.Ct. 1404 (quoting *Montana,* 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493)). Notwithstanding,

> Indian tribes [do] retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana,* 450 U.S. 544, 565–66, 101 S.Ct. 1245, 67 L.Ed.2d 493 (citations omitted).

*Montana* thus, described the general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health or welfare.

*Strate v. A–1 Contractors,* 520 U.S. 438, 446, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

Evincing a link between tribal exhaustion and tribal jurisdiction, the Supreme Court created an exception to the exhaustion requirement which provides as follows: "When … it is plain that no federal grant provides for tribal governance of nonmembers conduct on land covered by *Montana's* main rule, … the otherwise applicable exhaustion requirement, must give way, for it would serve no purpose other than delay." *Strate,* 520 U.S. 438, 459–60 n. 14, 117 S.Ct. 1404, 137 L.Ed.2d 661; *see Nevada v. Hicks,* 533 U.S. 353, 369, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001).

■ Based on the foregoing, the Court finds that the present matter requires tribal exhaustion. A careful review of the facts reveals the doctrine's applicability. This dispute is between three members of the Turtle Mountain Band of Chippewa and Amerind Risk Management over a contract the insurer entered into with the Turtle Mountain Housing Authority to provide liability insurance coverage. The Plaintiffs seek declaratory relief concerning the scope of that coverage in relation to the negligence action which remains pending in tribal court.

The North Dakota case of *Progressive Northwestern Insurance Co. v. Nielsen,*

No. A3–01–91, 2002 WL 417402 (D.N.D. Jan. 8, 2002), is instructive. In *Nielsen*, an automobile accident near the Turtle Mountain Indian Reservation generated two lawsuits: (1) a negligence action in tribal court by the injured party against the driver of the vehicle and the vehicle's owner; and (2) a declaratory judgment action in federal court by the vehicle's insurance carrier against the vehicle's insured owner and the injured party regarding the insurance coverage. The driver and the insured owner were both enrolled members of the Turtle Mountain Band of Chippewa, but the insurer was a non-member. After outlining the tribal exhaustion doctrine, the court framed the issue as follows:

> The ultimate question is that of jurisdiction—whether this declaratory judgment action should be heard in this federal court or in tribal court. The first question, however, is that of exhaustion—who should make the initial decision on the ultimate question. The Court must thus first determine if this case is appropriate for tribal exhaustion. If it is, the Court will hold the case in abeyance and allow the tribe the first determination; if it is not, the Court will make the ultimate decision.

*Id.* at \*2. Based on the facts presented, the court found a colorable claim of tribal court jurisdiction under *Montana* and required exhaustion. *See also Allstate Indemnity Co. v. Stump*, 191 F.3d 1071, 1074–1076 (9th Cir.1999) (citing *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987)) ("All-

state stands in the same position as Iowa Mutual. As in *LaPlante*, the insured and injured parties in this case were tribal members who lived on the reservation; the accident occurred on the reservation; and the insurer is an off-reservation entity that sold a policy to a tribal member. *LaPlante* thus indicates that exhaustion is required.").

Like *Nielsen*, most of the parties in this dispute are tribal members and the accident occurred on the reservation. However, unlike *Nielsen*, the insured is not simply a member of the tribe, but the Turtle Mountain Housing Authority—a tribal entity. While Amerind Risk Management is a non-member which limits tribal court jurisdiction, the case seems to fall squarely within the first *Montana* exception as Amerind entered into a contract with the tribe. 450 U.S. 544, 565–66, 101 S.Ct. 1245, 67 L.Ed.2d 493. As a result, the Court finds that tribal exhaustion is warranted. Due to the Turtle Mountain Housing Authority being a party to the contract and the existence of unique tribal questions, the Court finds that exhaustion is "especially appropriate" in the present dispute to protect the operation of tribal government and avoid undermining the authority of tribal courts. *See Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1420 (8th Cir.1996); *Weeks v. Oglala Sioux Housing Authority*, 797 F.2d 668, 674 (8th Cir.1986). As a result, the tribal court will be given the first opportunity to address the factual and legal issues presented.[5]

---

5. The Court would note in passing that coverage in this case appears to be relatively clear. The Amerind Risk Management policy was purchased by the Turtle Mountain Housing Authority with federal funds and appears to provide coverage for the claims presented. Federal law requires the purchase of liability coverage by the Turtle Mountain Housing Authority to operate this type of housing project. The liability policy expressly covers third par-

ty claims for personal injury or "bodily injury" as defined within the policy. None of the exclusions or defenses under the policy appear to have been triggered. Further, the claims of sovereign immunity asserted by Amerind to avoid coverage appear to be questionable at best. Nevertheless, this Court will afford the tribal courts the first opportunity to address such matters.

### III. *CONCLUSION*

For the reasons set forth above, the Defendant's Motion to Dismiss is **GRANTED** without prejudice. (Docket No. 12). The parties are required to exhaust tribal court remedies before the federal district court will become involved in this dispute. If needed, the parties can return to this forum for any further litigation.

**IT IS SO ORDERED.**