**AMERICAN INDIAN AGRICULTURAL CREDIT CONSORTIUM, INC., Appellee,**

v.

**STANDING ROCK SIOUX TRIBE, Standing Rock Sioux Tribal Council, Chairman of the Standing Rock Sioux Tribal Council, and Standing Rock Sioux Credit Committee, Appellants.**

No. 85–5209.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1985.

Decided Dec. 31, 1985.

---

8. Daily activities included walking a mile, doing yard work, and working on cars.

William R. Perry, Washington, D.C., for appellants.

Thomas W. Fredericks, Boulder, Colo., for appellee.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Supreme Court reaffirmed the long-standing rule that a waiver of the sovereign immunity from suit traditionally enjoyed by Indian tribes "cannot be implied but must be unequivocally expressed." *Id.* at 58, 98 S.Ct. at 1677. In this action the district court found that appellant Standing Rock Sioux Tribe had "clearly and unequivocally *indicate[d]*" its consent to suit on a loan from the American Indian Agricultural Credit Consortium, Inc., and on this basis concluded that Standing Rock effectively had waived its sovereign immunity.[1] Because we conclude that nothing short of an express waiver satisfies the *Santa Clara Pueblo* standard, and that Standing Rock did not expressly waive its sovereign immunity, we must reverse.

Consortium is a non-profit corporation composed of 15 Indian tribes, including Standing Rock, whose purpose is to aid individual tribe members through the advancement of low interest agricultural assistance loans. In 1978, member tribes' ranchers faced cattle feed shortages and accompanying financial strain brought on by unexpectedly severe winter weather. To expedite relief, Consortium agreed, upon a request by Standing Rock, to advance loans in block form to the member tribes, who in turn would disburse the funds to their individual ranchers. Standing Rock's tribal council then authorized its tribal chairman to secure a loan from Consortium.[2]

---

1. *American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, No. A1-82-157, slip op. at 6-7 (D.N.D. June 27, 1983) (emphasis supplied).

2. The tribal council's authorizing resolution stated in part:

NOW THEREFORE BE IT RESOLVED, that the Standing Rock Sioux Tribe hereby authorizes the securing of a loan through the Indian Cattlemen's Credit Consortium, of which Standing Rock is a member, in the amount of $78,666, to be utilized for the purchase of feed for Indian cattle operators on the Standing Rock Sioux Reservation.

BE IT FURTHER RESOLVED, that the Tribe understands that the loan will be for a period of seven years with the first two years only at one percent interest; and a repayment schedule thereafter will be developed between the Standing Rock Sioux Tribe and the Indian Cattlemen's Credit Consortium.

On February 15, 1978, a loan of approximately $80,000 was obtained on a promissory note signed by the tribal chairman. The loan was to be repaid in seven years with one percent annual interest. The promissory note provided Consortium, upon Standing Rock's default, with several remedies, including the right to charge interest on the principal balance, "in addition to such other and further rights and remedies provided by law." It also provided for reimbursement of attorney fees incurred in collection efforts. The note further stated that the rights and obligations under it would be subject to the law of the District of Columbia.[3] Nowhere, however, did the note expressly speak to Standing Rock's consent to suit or to waiver of immunity from suit.[4] Upon receipt of the loan, Standing Rock disbursed the funds to individual tribe members, who signed promissory notes with security interests in its favor. Standing Rock, however, did not establish a collection program, as it had indicated it would, and has failed to make any repayment to Consortium.[5]

In October 1982, Consortium brought this action seeking recovery on the loan. Standing Rock responded with a motion to dismiss asserting that the action was an unconsented suit barred by tribal sovereign immunity.[6] The district court denied the motion, and summary judgment was entered against Standing Rock. This appeal followed.

## I.

We begin our discussion, as did the district court, with a reiteration of the principles announced by the Supreme Court in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106. In *Santa Clara Pueblo*, the plaintiff, a female member of the tribe, and her daughter brought suit alleging that a tribal ordinance violated the equal protection clause of the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301–03 (1982). The ordinance at issue denied tribal membership and consequent property rights to the children of female tribe members who married outside the tribe, but extended membership to children of similarly situated male members.

---

BE IT FURTHER RESOLVED, that the Chairman and Secretary of the Tribal Council be authorized and instructed to sign this resolution for and on behalf of the Standing Rock Sioux Tribe, and that the Tribal Chairman, Pat McLaughlin, be authorized and instructed to sign any notes or documents resulting therefrom.
Joint Appendix at 21.

3. The promissory note began: "The Undersigned, for value received promise(s) to pay * * *," and continued:
upon nonpayment of this note at its stated or accelerated maturity, the Bank may, in addition to such other and further rights and remedies provided by law, (1) collect interest on the principal balance ...; (2) set off the amount owing against any deposit account maintained in the Bank ...; (3) hold as security ... any property ... delivered into the Bank ...; (4) sell all or part of the collateral at public or private sale(s) ...
The note stated further:
If this note is referred to an attorney for collection, each party liable for the payment * * * agrees that all reasonable attorney's fees and other costs of collection shall be added to such amount of principal and interest owing herein and shall be payable as part thereof.

The note finally stated: "This note and the rights and obligations of all parties hereto shall be subject to and governed by the law of the District of Collumbia."
Joint Appendix at 19–20.

4. The promissory note was a preprinted form agreement which, Standing Rock asserts, is designed for transactions involving individuals and not Indian tribes. Appellant's Brief at 17. Significantly, only tribes, and not individual tribe members, are protected by tribal immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. at 59, 98 S.Ct. at 1677.

5. At the time this appeal was submitted, individual loan recipients had repaid to Standing Rock nearly $8,000. Standing Rock has not transferred these repayments to Consortium; instead, it has deposited the funds with the district court pending the outcome of this appeal. Such a course of action appears to undermine Standing Rock's argument that in signing the note it intended to act as a mere conduit of the funds, rather than as a borrower and relender.

6. Standing Rock also claimed that the federal court lacked subject matter jurisdiction over the suit. Because we reverse on the waiver of immunity ground, we need not address this issue.

*Id.* at 51, 98 S.Ct. at 1673. The Court held that plaintiffs' suit was barred. Indian nations, the Court explained, possess "the common-law immunity from suit traditionally enjoyed by sovereign powers," *id.* at 58 (citing, *e.g.*, *United States v. United States Fidelity & Guaranty*, 309 U.S. 506, 512–13, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940)). The Court continued that sovereign immunity cannot be waived by implication; rather, waiver must be "unequivocally expressed." *Id.* 436 U.S. at 58–59, 98 S.Ct. at 1677. Since neither the Indian Civil Rights Act itself nor its legislative history contained such an unequivocal expression, the Court concluded, Santa Clara Pueblo was immune from suit. *Id.* at 72, 98 S.Ct. at 1684.[7]

The district court in this action acknowledged the *Santa Clara Pueblo* standard, but distinguished the case. The court opined that the strict express waiver standard, employed to determine whether Congress had authorized a private action based on a statute, need not be applied in evaluating a waiver of sovereign immunity by a tribe itself. The court gave two reasons. First, while a finding of waiver in a statute would affect an entire class of cases, a similar finding in an agreement covering a single transaction would not threaten such widespread interference with tribal autonomy. Second, a waiver based on congressional action, because it is externally imposed, more severely impinges on tribal autonomy than does a waiver by the tribe itself, and therefore should be more reluctantly found. The court warned additionally that "application of the strict 'express' waiver standard in cases of individual waivers by the Tribes would restrict a Tribe's ability to enter into commercial dealing with outsiders, and in some cases, unjustly deprive outsiders of the benefit for which they lawfully contracted, a by-product of which, is worse relations between Indian and non-Indian communities." Slip op. at 5–6.

The district court thus determined that Standing Rock's sovereign immunity to suit on the promissory note should be deemed waived if Standing Rock had "clearly and unequivocally indicate[d]" its willingness to expose itself to suit on the note. Slip op. at 6. In so doing, the court carved out a position different from the "unequivocally expressed" standard of *Santa Clara Pueblo*. Based on the terms of the note, which reserved to Consortium "rights and remedies provided by law" should collection efforts be required, and which contained an attorney fee provision and a choice of law clause, the court concluded that Standing Rock gave clear indication that it expected suit in the event of default. The court held, therefore, that Standing Rock effectively had waived its sovereign immunity.

There is much appeal to the district court's desire to make Standing Rock face up to its promise. We would have no difficulty implying from the language in the tribal resolution and promissory note, and from the circumstances surrounding Standing Rock's explicit authorization of the loan and receipt of the funds, a waiver of sovereign immunity. We believe this is in essence what the district court did when it concluded that Standing Rock had "unequivocally indicate[d]" its consent to suit. However, it is evident that the district court's legal conclusion runs directly counter to the rule of *Santa Clara Pueblo* and the body of cases on which it is based.

■ The principle that Indian nations possess sovereign immunity has long been

7. Consortium urges that the Supreme Court's willingness in *Santa Clara Pueblo* to search through the legislative history of the Indian Civil Rights Act demonstrates that the absence of an express waiver on the face of the contract creates merely a presumption that sovereign immunity has not been waived, but that the presumption may be rebutted by the finding of a contrary expression in the circumstances surrounding the transaction. Appellee's Brief at 10–13. This argument reads too much into the Supreme Court's method. The Court's analysis was confined to a search for an "unequivocal expression of legislative intent," 436 U.S. at 59, 98 S.Ct. at 1677, and did not signal a broad investigation into surrounding circumstances. We thus decline Consortium's invitation to descend this slippery semantic slope, preferring instead to rest safely on the clear mandate of the case.

part of our jurisprudence. *United States v. Kagama,* 118 U.S. 375, 382, 6 S.Ct. 1109, 1113, 30 L.Ed. 228 (1886); *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 519, 8 L.Ed. 483 (1832); *accord Namekagon Development Co. v. Bois Forte Reservation Housing Authority,* 517 F.2d 508 (8th Cir.1975). Indian tribes enjoy immunity because they are sovereigns predating the Constitution, *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. at 512-13, 60 S.Ct. at 656; *Turner v. United States,* 248 U.S. 354, 357-58, 39 S.Ct. 109, 110, 63 L.Ed. 291 (1919), and because immunity is thought necessary to promote the federal policies of tribal selfdetermination, economic development, and cultural autonomy. *See generally,* F. Cohen, *Handbook on Federal Indian Law* 324-28 (1982); Note, *In Defense of Tribal Sovereign Immunity,* 95 Harv.L. Rev. 1058, 1073 (1982). That sovereign immunity can be surrendered only by express waiver enjoys similarly ancient pedigree. *Price v. United States and Osage Indians,* 174 U.S. 373, 375-76, 19 S.Ct. 765, 766, 43 L.Ed. 1011 (1899); *Beers v. Arkansas,* 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1857) ("[A]s this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted * * *."); *accord Santa Clara Pueblo v. Martinez,* 436 U.S. at 58-59, 98 S.Ct. at 1677. We steadfastly have applied the express waiver requirement irrespective of the nature of the lawsuit. *See, e.g., Fontenelle v. Omaha Tribe,* 430 F.2d 143 (8th Cir.1970) (suit to quiet title). And indeed, this court long ago settled that these principles apply in contract actions against Indian tribes. *Thebo v. Choctaw Tribe,* 66 F. 372 (8th Cir.1895) (suit to recover on a contract for payment of attorney fees); *accord Adams v. Murphy,* 165 F. 304 (8th Cir.1909). Other courts concur. *E.g., Ramey Construction Co. v. Apache Tribe,* 673 F.2d 315 (10th Cir.1982) (construction contract); *United States v. Oregon,* 657 F.2d 1009 (9th Cir.1981) (fishing conservation agreement). We therefore must reject, on the basis of overwhelming precedent alone, the district court's conclusion that the sovereign immunity of an Indian nation need not be expressly waived, but can be waived by implication, in contract actions.

■ We recognize, of course, that the values of stability and judicial economy promoted by *stare decisis* must yield when reason and fairness so compels. *See Garcia v. San Antonio Metropolitan Transit Authority,* — U.S. —, 105 S.Ct. 1005, 1021, 83 L.Ed.2d 1016 (1985); *United States v. Scott,* 437 U.S. 82, 86-87, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65 (1978). But we believe these accepted principles retain vitality and do not believe that the distinctions proferred by the district court between this case and *Santa Clara Pueblo* support disregard of the settled rule. The district court reasoned that a rule permitting implied waiver of Indian nation sovereign immunity in contract cases, as distinguished from statutory actions, would neither create a widespread threat to nor substantially impinge on tribal autonomy. We cannot agree. Indian tribes long have structured their many commercial dealings upon the justified expectation that absent an express waiver their sovereign immunity stood fast. Relaxation of the settled standard invites challenge to virtually every activity undertaken by a tribe on the basis that the tribal immunity had been implicitly waived. Moreover, a waiver of immunity by tribal action represents a substantial surrender of sovereign power and therefore merits no less scrutiny than a waiver based on congressional action. As the Fifth Circuit stated, "[T]o construe the immunity to suit as not applying to suits on liabilities arising out of private transactions would defeat the very purpose of Congress in not relaxing the immunity, namely, the protection of the interests and the property of tribes * * *." *Maryland Casualty Co. v. Citizens National Bank,* 361 F.2d 517, 521-22 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 171 L.Ed.2d 143 (1966).

Nor do we share the district court's concern that the express waiver standard impairs a tribe's ability to conduct business.

Tribes and persons dealing with them long have known how to waive sovereign immunity when they so wish. *See Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537, 540 (10th Cir.1980), *aff'd on other grounds,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (tribal council tax ordinance expressly provides that tribe consents to suit in tribal or federal court); *Namekagon Development Co. v. Bois Forte Reservation Housing Authority,* 517 F.2d at 509 (tribal council ordinance establishing Housing Authority provides: "The Council hereby gives its irrevocable consent to allowing Authority to sue or be sued in its corporate name, upon any contract, claim or obligation arising out of its activities * * *."); *Fontenelle v. Omaha Tribe of Nebraska,* 430 F.2d at 147 (tribal corporate charter authorizes it to "sue or be sued in courts of competent jurisdiction"); *Maryland Casualty Co. v. Citizens National Bank,* 361 F.2d 517 (5th Cir.1966) (tribal constitution authorizes tribe to "sue or be sued," but bars attachment of tribal property). Indeed, Consortium, as an organization composed of Indian tribes, can be expected to have been especially alert to the express waiver requirement, and should have acted accordingly. The rule is settled and certain, and proves no burden to tribal commerce when squarely engaged.

The district court finally observed that the express waiver standard can unfairly deprive contracting parties of the benefit of their bargains. Consortium argues in its brief: "Simply stated, Standing Rock 'welshed' on its loan with the Indian Consortium and is attempting to hide under the blanket of tribal immunity." Appellee's Brief at 25. If injustice has been worked in this case, it is not the rigid express waiver standard that bears the blame, but the doctrine of sovereign immunity itself. But it is too late in the day, and certainly beyond the competence of this court, to take issue with a doctrine so well-established. That justice may be done beyond this proceeding—that Standing Rock, by raising the shield of sovereign immunity expressly to avoid an obligation it voluntarily assumed and promised to fulfill, may

have alienated Consortium, its constituent tribes, and other lenders on whom it must rely—these are consequences we do not doubt. Nevertheless, the district court's position represents a clear departure from authority. *Santa Clara Pueblo* and its lineage compel us to conclude that nothing short of an express and unequivocal waiver can defeat the sovereign immunity of an Indian nation.

## II.

■ Although we reject the waiver standard developed by the district court, we still must determine whether there is sufficient evidence that Standing Rock did in fact expressly waive its sovereign immunity to satisfy the standard announced in *Santa Clara Pueblo.* The promissory note signed by Standing Rock's tribal chairman stated that "the Undersigned promises to pay," alluded to various "rights and remedies provided by law" available to Consortium in the event of default, contained a provision allowing for recovery of attorney fees, and a choice of law clause. We must decide whether these provisions, read singly or together, constitute an express waiver of sovereign immunity.

In *Ramey Construction Co. v. Apache Tribe,* 673 F.2d 315, suit was brought against an Indian tribe for breach of a construction contract. The plaintiff claimed that various clauses in the contract constituted an effective waiver of the tribe's sovereign immunity. The court stated:

Ramey claims that [the tribe] waived that immunity by one or all of the following actions: (1) agreeing to an attorneys' fees clause in the contract; (2) entering into a loan agreement with the Bank of New Mexico obligating the Tribe to "duly pay and discharge ... all claims of any kind ..."; (3) submitting a certificate to the United States Economic Development Agency stating that the contract documents "constitute valid and legally binding obligations upon the parties ..."; (4) obtaining payment and performance bonds from a surety; (5) con-

senting to partial summary judgment with respect to the contract retainage; and (6) including a "sue or be sued" clause in the corporate charter. *Id.* at 319.

The Tenth Circuit, after discussing *Santa Clara Pueblo*, held that none of these provisions amounted to an express waiver of sovereign immunity. "The first four grounds upon which Ramey premises its claim of a waiver of sovereign immunity," the court observed, "are simply attempts by Ramey to imply a waiver where no express waiver exists." *Id.* The fifth ground, the court reasoned, constitutes consent to entry of judgment on funds withheld, not consent to a plenary action. *Id.* at 320. The sixth ground the court found irrelevant, since Ramey had done business not with the tribal corporation, but with the tribe itself. *Id.* at 320-21. *Ramey* illustrates the narrow focus courts have taken in finding an express waiver of immunity. We cannot reasonably distinguish *Ramey* from our case, except to observe that the plaintiff there had a stronger claim than does Consortium.

Consortium argues, however, that *United States v. Oregon*, 657 F.2d 1009 (9th Cir.1981), demonstrates that sovereign immunity can be expressly waived without any particular verbal formula, and urges us to adopt its rationale to find that Standing Rock waived its immunity to suit. In that case, the United States initiated an action against the State of Oregon to protect the fishing treaty rights of all Indian tribes occupying the Columbia River Basin. Soon thereafter the Yakima Tribe intervened. *Id.* at 1011. Several years later, the original parties and the intervenors entered a conservation agreement which provided, among other things, that the parties would submit all disputes incapable of negotiated resolution to the Oregon federal district court. *Id.* When suit was brought to enjoin the Yakima Tribe from certain fishing practices violative of the agreement, the tribe invoked its sovereign immunity which it claimed had not been expressly waived. *Id.* at 1011-12. The court found that Yakima Tribe had expressly consented to suit on two independent grounds: first, by intervening in the original action;[8] and second, by agreeing to submit all disputes over fishing rights to the federal district court. *Id.* at 1014-16.[9]

We recognize that *United States v. Oregon* suggests substantially broader criteria for a finding of express waiver, and surely presses the outer boundary of what the Supreme Court intended by its plain statement in *Santa Clara Pueblo*. But even were we to accept these criteria, we still would be unable to conclude from the evidence presented that Standing Rock had expressly waived its sovereign immunity to suit. Here, Standing Rock did not explicitly consent to submit any dispute over repayment on the note to a particular forum, or to be bound by its judgment. To derive

8. In *United States v. United States Fidelity & Guaranty*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894, the Court held that even where the tribe initiates an action, tribal immunity bars a compulsory counterclaim in excess of the original claim. Yakima argued that this principle demonstrates that by entering into the suit, Yakima was entitled either to an injunction in its favor or no relief at all. It did not by its action expressly waive its immunity to the court's adverse exercise of jurisdiction, since the granting of an injunction against Yakima was not among the possibilities initially risked. Hence, the later injunction should be barred as analogous to imposition of judgment on a compulsory counterclaim in excess of the original claim brought. *United States v. Oregon*, 657 F.2d at 1014. The court was careful to distinguish *United States Fidelity & Guaranty*, observing that by intervening when proceeding in equity, where "flexible decrees" are a "central tenet," "the Tribe assumed the risk that its position would not be accepted, and that the Tribe itself would be bound by an order it deemed adverse." *United States v. Oregon*, 657 F.2d at 1015-16.

9. Two recent state court cases have followed the Ninth Circuit's ruling that agreement to submit disputes to the jurisdiction of the federal courts constitutes an express waiver of sovereign immunity. These courts held that a contract clause providing that all disputes be submitted to arbitration constitutes an express waiver. *Native Village of Eyak v. GC Contractors*, 658 P.2d 756, 760-61 (Alaska 1983); *Val/Del, Inc. v. Superior Court*, 145 Ariz. 558, 703 P.2d 502, 508-09, *cert. denied*, —— U.S. ——, 106 S.Ct. 250, 88 L.Ed.2d 257 (1985).

an express waiver of sovereign immunity from a promissory note that merely alludes to "rights and remedies provided by law," that provides for attorney fees in the event of a collection action, and that contains a choice of law provision, simply asks too much. We are persuaded, based on the reasoning of the Tenth Circuit in *Ramey*, and by the firm standard reaffirmed by the Supreme Court in *Santa Clara Pueblo*, that this case does not present sufficient evidence to demonstrate that Standing Rock expressly waived its sovereign immunity to suit.

We reverse the judgment of the district court.