BEAM, Circuit Judge.
Amerind Risk Management Corporation (Amerind) is a federally chartered corporation that assumed the rights and obligations of its tribally chartered predecessor, also named Amerind Risk Management Corporation (ARMC). Amerind appeals the federal district court’s adverse grant of summary judgment in this declaratory judgment action. Amerind sought a determination in federal district court that the Turtle Mountain Tribal Court (Tribal Court) lacked jurisdiction over tort litigation between Amerind and three enrolled members of the Turtle Mountain Band of Chippewa Indians (Tribe), and requested an order enjoining the plaintiffs from proceeding in the Tribal Court. The district court held that, although Amerind was a nonmember of the Tribe, the Tribal Court had jurisdiction over the tort litigation based on ARMC’s contractual relationship with the Turtle Mountain Housing Authority (TMHA), an entity of the Tribe.
We hold that the Tribal Court does not have jurisdiction over the plaintiffs’ direct suit against Amerind because Amerind is entitled to tribal immunity and the plaintiffs have failed to meet their burden of showing that Amerind waived such immunity. Accordingly, we reverse the district court and remand with directions to enjoin the plaintiffs from proceeding against Amerind in Tribal Court.
I. BACKGROUND
In 1986, at the encouragement of the United States Department of Housing and Urban Development, ARMC was incorporated under the laws of the Red Lake Band of Chippewa Indians as a self-insurance risk pool for Indian Housing Authorities and Indian tribes. TMHA joined the ARMC risk pool and, on December 28, 2001, ARMC issued TMHA a “Certificate of Coverage” and a “Scope of Coverage” document outlining TMHA’s property damage and personal injury coverage from January 1, 2002, through December 31, 2002.
On October 19, 2002, a fire destroyed a house on the Turtle Mountain Indian Reservation being leased from TMHA, killing two house guests and seriously injuring a third. Three enrolled members of the Tribe—Myrna Malaterre and Carol Bel-garde, mothers of the deceased house guests; and Lonnie Thompson, the injured house guest (plaintiffs)[1]—brought a wrongful death and personal injury action against TMHA in the Tribal Court. The complaint was amended on September 5, 2003, to include ARMC as a defendant. ARMC filed a motion to dismiss, challenging the Tribal Court’s jurisdiction on the basis of tribal sovereign immunity. While the case was pending in Tribal Court, the Department of the Interior issued a federal corporate charter incorporating Ame *683 rind pursuant to 25 U.S.C. § 477.[2] The charter was effective upon ratification by the Charter Tribes—the Red Lake Band of Chippewa Indians, the Confederated Salish and Kootenai Tribes of the Flathead Reservation, and the Pueblo of Santa Ana. By April 15, 2004, all three Charter Tribes passed resolutions ratifying Amerind’s federal charter. Notably, the federal charter gave Amerind the power “[t]o acquire the rights and assets and assume the obligations and liabilities of [ARMC].”
On July 1, 2004, the plaintiffs filed a declaratory judgment action in federal district court seeking a determination that the ARMC self-insurance policy covered their claims. Amerind filed a motion to dismiss, asserting that the plaintiffs failed to exhaust their tribal remedies and, alternatively, that Amerind was entitled to tribal sovereign immunity as a § 477 corporation. The federal district court dismissed the case without prejudice, holding that pursuant to the tribal exhaustion doctrine, the Tribal Court should be given the first opportunity to address the factual and legal issues presented in the case, including the tribal sovereign immunity issue. Malaterre v. Amerind Risk Mgmt., 373 F.Supp.2d 980, 982 n. 3, 985-86 (D.N.D. 2005) (Amerind I). The court noted that “[i]f needed, the parties can return to this forum for any further litigation.” Id. at 986. Thus, the parties returned to the Tribal Court.
On October 20, 2005, the plaintiffs filed a stipulation to dismiss TMHA with prejudice in the Tribal Court. The Tribal Court granted the motion, leaving Amerind as the sole defendant in the case. Amerind then filed a motion to dismiss, asserting inter alia that it was entitled to tribal sovereign immunity as a § 477 corporation, and that the plaintiffs’ action could not proceed directly against Amerind because they were not parties to ARMC’s contract with TMHA. The Tribal Court denied Amerind’s motion to dismiss, holding that Amerind was not entitled to sovereign immunity because it “does not stand in the same position as TMHA or the [Tribe].” The court also held that the plaintiffs could proceed directly against Amerind because, under Turtle Mountain tribal law, claimants may proceed directly against an insurer if the insured was required by federal law to obtain insurance designed to protect the public against losses. The Tribal Court’s decision did not address Amerind’s specific contention that it was entitled to sovereign immunity in its own right as a § 477 corporation. Amerind appealed to the Turtle Mountain Tribal Court of Appeals (Tribal Court of Appeals).
Before the Tribal Court of Appeals, Amerind again asserted that it was entitled to sovereign immunity as a § 477 corporation, and that the plaintiffs were prohibited from maintaining a direct suit against Amerind. The Tribal Court of Ap *684 peals affirmed the Tribal Court’s denial of Amerind’s motion to dismiss, reasoning that Amerind was not entitled to share in TMHA’s sovereign immunity, and that tribal law permitted the plaintiffs’ direct suit. Like the Tribal Court, the Tribal Court of Appeals failed to specifically discuss Amerind’s status as a § 477 corporation and whether Amerind was entitled to sovereign immunity in its own right.
On September 4, 2007, Amerind commenced a declaratory judgment action in federal district court, seeking a determination that the Tribal Court exceeded its jurisdiction by exercising authority over Amerind, a nonmember of the Tribe, under Montana v. United States, 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). Amerind also sought to enjoin the plaintiffs[3] from pursuing their tort action directly against Amerind in Tribal Court. Amerind filed a motion for summary judgment on June 24, 2008. Inexplicably, Amerind failed to raise the tribal immunity issue in either its complaint or in its motion for summary judgment. Nevertheless, the plaintiffs’ response to Amerind’s motion for summary judgment outlined provisions in the Scope of Coverage agreement that allegedly waived ARMC’s, and by extension Amerind’s, sovereign immunity. The plaintiffs’ response also rhetorically inquired, “Why does AMERIND argue that it is entitled to sovereign immunity when the policy clearly states otherwise?” and asserted that “neither AMERIND nor TMHA is entitled to raise sovereign immunity as a defense to the [plaintiffs’] claims.”
The district court denied Amerind’s motion for summary judgment, concluding that under Montana, the Tribal Court had jurisdiction over Amerind because ARMC entered into a consensual contractual relationship with TMHA to insure TMHA against personal injury and property loss. Amerind Risk Mgmt. Corp. v. Malaterre, 585 F.Supp.2d 1121, 1130 (D.N.D.2008) (Amerind, II). The court also incorporated the Tribal Court of Appeals’ decision by reference and sua aponte granted summary judgment in favor of the plaintiffs, directing the parties to litigate the plaintiffs’ suit in the Tribal Court. Id. The district court did not address whether the doctrine of tribal sovereign immunity affected the Tribal Court’s jurisdiction—an issue raised in Amerind I, discussed in the Tribal Court of Appeals’ incorporated decision, and addressed in the plaintiffs’ response to Amerind’s motion for summary judgment.
Amerind appeals, asserting in part that the Tribal Court lacked jurisdiction over Amerind under Montana. Amerind did not raise the tribal immunity issue in its appellate brief, and we directed the parties to address whether tribal immunity barred the plaintiffs’ action against Amerind in the Tribal Court. See Taylor v. Alabama Intertribal Council Title IV J.T.P.A., 261 F.3d 1032, 1034 (11th Cir.2001) (per cu-riam) (We may “sua sponte conduct an inquiry into whether a party enjoys Indian sovereign immunity, as this consideration determines whether a court has jurisdiction to hear an action.”).
II. DISCUSSION
We have held that tribal sovereign immunity is a threshold jurisdictional question.[4] Hagen v. Sisseton-Wahpeton *685 Cmty. Coll., 205 F.3d 1040, 1044 (8th Cir. 2000). “Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.”[5] Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Thus, “[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.” Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). “A waiver of sovereign immunity may not be implied, but must be unequivocally expressed by either the Tribe or Congress.” Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir.1995).
To determine whether Amerind is immune from the plaintiffs’ suit in Tribal Court, we must first determine whether Amerind is entitled to sovereign immunity. While Amerind is not itself a tribe, “[i]t is ... undisputed that a tribe’s sovereign immunity may extend to tribal agencies.” Hagen, 205 F.3d at 1043. As discussed above, Amerind was incorporated by three Charter Tribes and issued a federal charter under 25 U.S.C. § 477. Several courts have recently recognized that § 477 corporations are entitled to tribal sovereign immunity. See Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc., 585 F.3d 917, 920-21 (6th Cir.2009); Bales v. Chickasaw Nation Indus., 606 F.Supp.2d 1299, 1304 (D.N.M.2009); Sanchez v. Santa Ana Golf Club, Inc., 136 N.M. 682, 104 P.3d 548, 551 (2004). As the Sixth Circuit emphasized in Memphis Biofuels, “the language of [§ 477] itself—by calling the entity an ‘incorporated tribe’—suggests that the entity is an arm of the tribe.” 585 F.3d at 921.
We also note that Amerind is not an ordinary insurance company. Indeed, Amerind’s purpose is to administer a self-insurance risk pool for Indian Housing Authorities and Indian tribes. See Self-Insurance Plans Under the Indian Housing Block Grant Program, 71 Fed. Reg. 11464, 11464 (proposed Mar. 7, 2006) (“AMERIND continues to administer the approved self-insurance plan for properties funded under NAHASDA, pursuant to 24 CFR 1000.138.”). Because Amerind is a § 477 corporation that administers a tribal self-insurance risk pool, we hold that Amerind “serves as an arm of the [Charter Tribes] and not as a mere business and is thus entitled to tribal sovereign immunity.” Hagen, 205 F.3d at 1043.
Given that Amerind is entitled to tribal immunity, our next question is whether Amerind’s immunity has been waived.[6] The plaintiffs bear the burden of *686 proving that either Congress or Amerind has expressly and unequivocally waived tribal sovereign immunity, Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir.2001); Welch v. United States, 409 F.3d 646, 651 (4th Cir.2005). The plaintiffs do not argue that Congress waived Amerind’s sovereign immunity, so our focus is solely on whether Amerind waived its sovereign immunity.
The plaintiffs assert that Amerind waived its sovereign immunity by failing to raise the issue before the district court in Amerind II. However, our court has held that sovereign immunity is a “threshold jurisdictional matter” and a “jurisdictional prerequisite.” Hagen, 205 F.3d at 1044 (quotations omitted). Therefore, tribal sovereign immunity may be raised for the first time on appeal, id., or raised sua sponte by the court. Taylor, 261 F.3d at 1034. We also note that the tribal sovereign immunity issue is not a newcomer to the litigation between these parties. Indeed, the issue was raised in Amerind I, in the Tribal Court, in the Tribal Court of Appeals, and it was discussed in the plaintiffs’ response to Amerind’s motion for summary judgment in Amerind II. Ae-cordingly, we hold that Amerind did not waive its tribal immunity by failing to raise the issue in Amerind II, and we properly raised the issue sua sponte.
The plaintiffs’ second waiver argument is more complex. The plaintiffs begin their argument by pointing out that Amerind’s federal charter authorizes Amerind to “assume the obligations and liabilities of [ARMC].” The plaintiffs then assume, without citing any supporting authority, that this provision constitutes an express waiver of Amerind’s sovereign immunity so long as ARMC was amenable to the plaintiffs’ pending suit in Tribal Court. Finally, the plaintiffs point to provisions in the contract between ARMC and TMHA that purportedly waive ARMC’s, and by extension Amerind’s, tribal immunity. Because we hold that the general assumption of ARMC’s obligations and liabilities in Amerind’s federal charter does not constitute an express waiver of Amerind’s sovereign immunity, we need not address the plaintiffs’ arguments regarding ARMC’s purported waiver of its sovereign immunity.[7]
To determine whether Amerind waived its sovereign immunity when it expressly *687 assumed ARMC’s “obligations and liabilities,” we find the Eleventh Circuit’s decision in Asociacion de Empleados del Area Canalera v. Panama, Canal Commission, 453 F.3d 1309, 1316 (11th Cir.2006) instructive. There, plaintiffs sued the Panama Canal Commission (PCC), a wholly-owned United States corporation, for unpaid work benefits. Id. at 1311-12. While the suit was pending, Congress terminated the PCC and, through 22 U.S.C. § 3712(e)(2), directed the General Service Administration (GSA) to “make payments of any outstanding liabilities of the PCC.” Id. at 1312 (internal quotation omitted). The plaintiffs argued that by directing the GSA to pay the PCC’s “outstanding liabilities,” Congress unequivocally waived the GSA’s sovereign immunity as to the pending suit. The Eleventh Circuit disagreed, holding that “to accept [plaintiffs’] position would be to imply a waiver of immunity, which we will not do.” Id. at 1315.
Precedent from our circuit also supports the conclusion that Amerind’s general assumption of ARMC’s “obligations and liabilities” was, at most, an implied waiver of sovereign immunity. In American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe, 780 F.2d 1374 (8th Cir.1985), a creditor sued the Standing Rock Sioux Tribe after the tribe defaulted on a promissory note. The promissory note stated that, upon the tribe’s default, the creditor was entitled to (1) “rights and remedies provided by law,” and (2) reimbursement of attorney fees incurred in collection efforts. Id. at 1376. The note also stated that such rights and obligations would be subject to the law of the District of Columbia. Id. We rejected the creditor’s argument that the promissory note constituted an express waiver of the Tribe’s sovereign immunity. Specifically, we emphasized that through the note, the Tribe did not “explicitly consent to submit any dispute over repayment on the note to a particular forum, or to be bound by its judgment.” Id. at 1380. Accordingly, we held that “[t]o derive an express waiver of sovereign immunity” from the promissory note “simply asks too much.” Id at 1380-81.
Like the promissory note in Standing Rock, and like the federal statute in Aso-ciación de Empleadas, Amerind’s federal charter does not state that Amerind, in assuming ARMC’s obligations and liabilities, consents to submit to a particular forum, or consents to be bound by its judgment. Cf. Rosebud Sioux Tribe v. Val-U Const. Co. of S.D., Inc., 50 F.3d 560, 563 (8th Cir.1995) (holding that tribe waived its immunity as to contract claims by expressly designating an arbitral forum to settle contract disputes and agreeing to arbitration rules that explicitly provided for judicial enforcement of arbitration awards). In fact, Article 8, Section 8.18 of Amerind’s charter provides that Amerind may “sue and be sued in the Corporation’s name in courts of competent jurisdiction within the United States, but only to the extent provided in and subject to the limitations stated in Article 16 of this Charter.” (emphasis added). Article 16.4 provides:
Any waiver [of tribal immunity] by the Corporation ... shall be in the form of a resolution d,uly adopted by the Board of Directors, which resolution shall not require the approval of the Charter Tribes or the Secretary of the Interior. The resolution shall identify the party or parties for whose benefit the waiver is granted, the transaction or transactions and the claims or classes of claim for which the waiver is granted, the property of the Corporation which may be subject to execution to satisfy any judgment which may be entered in the claim, and shall identify the court or courts in which suit against the Corporation may *688 be brought. Any waiver shall be limited to claims arising from the acts or omissions of the Corporation, its Directors, officers, employees or agents, and shall be construed only to effect the property and Income of the Corporation.
(emphasis added). The plaintiffs have provided no evidence that Amerind’s Board of Directors ever adopted a resolution waiving Amerind’s immunity as to the plaintiffs’ pending suit, and absent such a resolution, we cannot say that Amerind unequivocally waived its sovereign immunity when it generally assumed ARMC’s “obligations and liabilities.”[8] See Memphis Biofuels, 585 F.3d at 921-22 (where federal charter required board resolution to waive tribal immunity, immunity was not waived without such a resolution even though the corporation’s contract with the plaintiff expressly waived all immunities).
Thus, we hold that Amerind is entitled to sovereign immunity and that the plaintiffs have failed to show that Amerind expressly waived such immunity as to the underlying personal injury/wrongful death action in this ease. Given that Amerind did not waive its sovereign immunity, we need not decide whether ARMC was amenable to the plaintiffs’ suit.[9] Accordingly, *689 the Tribal Court does not have jurisdiction over the plaintiffs’ direct suit against Amerind.
III. CONCLUSION
We reverse the district court and remand with instructions to enjoin the plaintiffs from proceeding against Amerind in the Tribal Court.

. Lonnie Thompson was added as a plaintiff after the lawsuit was filed.

. 25 U.S.C. § 477 provides:
The Secretary of the Interior may, upon petition by any tribe, issue a charter of incorporation to such tribe: Provided, That such charter shall not become operative until ratified by the governing body of such tribe. Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law, but no authority shall be granted to sell, mortgage, or lease for a period exceeding twenty-five years any trust or restricted lands included in the limits of the reservation. Any charter so issued shall not be revoked or surrendered except by Act of Congress.

. In this declaratory judgment action, Mala-terre, Belgarde, and Thompson are lechnically "defendants,” but they are "plaintiffs” in the underlying Tribal Court action, and we refer to them as "plaintiffs” here to avoid confusion.

. Amerind concedes it voluntarily waived its tribal immunity in federal court by filing this *685 declaratory judgment action, so our jurisdiction is not in dispute. See Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244-45 (8th Cir. 1995). Therefore, our question on appeal is whether tribal sovereign immunity precludes the Tribal Court from exercising jurisdiction over the plaintiffs’ underlying tort action.

. Amerind is a § 477 corporation that is jointly owned by the Charter Tribes, not the Turtle Mountain Band of Chippewa Indians. "The power to subject other sovereigns to suit in tribal court [is] ... not a part of the tribes' inherent sovereignty.” Montana v. Gilham, 133 F.3d 1133, 1138 (9th Cir.1998).

. The plaintiffs assert that we may not consider Amerind’s federal corporate charter because it was not introduced into the record in Amerind II. We note that citations to and quotations from Amerind’s federal charter appear in the exhibits attached to the plaintiffs' response to Amerind’s motion for summary judgment in Amerind II. Moreover, the charter, which was issued by the Department of the Interior, was introduced into evidence in Amerind I and in the Tribal Court. Therefore, our consideration of the charter is appropriate. See Omaha Tribe of Neb. v. Miller, 311 F.Supp.2d 816, 819 n. 3 (S.D.Iowa 2004) (taking judicial notice of tribe's corporate charter *686 as a public record); Biomedical Patent Mgmt. Corp. v. Cal., Dep't of Health Servs., 505 F.3d 1328, 1331 n. 1 (Fed.Cir.2007) (taking judicial notice of court filings from previous litigation between the parties as public records); Attorney’s Process & Investigation Servs., Inc. v. Sac & Fox Tribe of the Miss. in Iowa, 609 F.3d 927, 937 (8th Cir.2010) ("In analyzing the jurisdictional issue we rely on the record developed in the tribal courts....”), cert. denied, — U.S. -, 131 S.Ct. 1003, - L.Ed.2d-(2011). Because it is undisputed that Amerind is a § 477 corporation that administers a self-insurance risk pool, we only consider the charter's specific provisions to determine whether Amerind waived its sovereign immunity. Given that the plaintiffs bear the burden of proving waiver, their attempt to exclude the chatter from our discussion is counterintuitive.

. A sovereign entity does not automatically waive its sovereign immunity through the mere act of succeeding a corporation that is either not entitled to sovereign immunity or that has waived such immunity. See Asociacion de Empleados del Area Canalera v. Panama Canal Comm’n, 453 F.3d 1309, 1315-16 (11th Cir.2006); Maysonet-Robles v. Cabrero, 323 F.3d 43, 49-50 (1st Cir.2003); Kroll v. Bd. of Trs. of the Univ. of Ill., 934 F.2d 904, 909 (7th Cir.1991). In other words, a predecessor corporation’s amenability to a pending suit is irrelevant unless the sovereign successor’s immunity has been expressly and unequivocally waived. Asociacion de Empleados, 453 F.3d at 1316; Maysonet-Robles, 323 F.3d at 50; Kroll, 934 F.2d at 909. Thus, if Amerind did not expressly waive its sovereign immunity, we need not determine whether ARMC was immune from suit.

. We disagree with the dissent’s contention that we should remand to the district court for the plaintiffs to conduct further discovery. In Amerind I, Amerind’s motion to dismiss asserted that Amerind’s Board of Directors had not adopted a resolution to waive Amerind's tribal immunity and the plaintiffs were permitted discovery. Later, the parties litigated the tribal immunity issue in both the Tribal Court and the Tribal Court of Appeals. Now, more than six years after Amerind raised the tribal immunity issue in Amerind I, the plaintiffs can point to no evidence that Amerind’s Board of Directors ever passed a resolution to waive Amerind's sovereign immunity as to the plaintiffs’ claims. Under these circumstances, we find that remanding this case for another round of discovery is neither appropriate nor necessary.

. Although we need not decide whether ARMC was amenable to suit, we disagree with the dissent’s assertion that ARMC waived its immunity through the Scope of Coverage agreement's arbitration provision. The provision in question is housed under the heading "Non-Binding Arbitration” and provides: "If [TMHA] and [ARMC] do not agree whether coverage is provided by the Scope of Coverage document, then either party may make a written demand for arbitration.” (emphasis added). This provision is readily distinguishable from the arbitration provisions that operated as express waivers of tribal immunity in C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001), and Rosebud, 50 F.3d 560 (8th Cir. 1995). Unlike the provision in the present case, the arbitration provisions in those cases expressly required binding arbitration and judicial enforcement of arbitration awards. C & L, 532 U.S. at 414-15, 121 S.Ct. 1589; Rosebud, 50 F.3d at 562-63. Also, unlike the plaintiffs in the present case, the plaintiffs in both C & L and Rosebud were parties to the contracts containing the arbitration provisions at issue. C & L, 532 U.S. at 414, 121 S.Ct. 1589; Rosebud, 50 F.3d at 563. And finally, the Rosebud court held that the binding arbitration provision in that case waived tribal immunity as to contract claims, but not as to tort claims. Rosebud, 50 F.3d at 563. It is a mystery, then, how the nonbinding arbitration provision in the agreement between ARMC and TMHA waived ARMC’s tribal immunity as to the plaintiffs’ underlying tort action.
The dissent also places undue emphasis on the Scope of Coverage document’s conformity provision, which provides that "[i]f any provision of this policy conflicts with the tribal laws of [the Tribe], this policy is amended to conform to those laws.” In order to drum up a conflict between the policy and Turtle Mountain tribal law, which permits direct suits against insurers under certain circumstances, the dissent relies on a remote provision housed in the policy’s "Tribal Housing Officials Liability Coverage” section. The provision provides: “No action shall be taken against the Insurer unless, as a condition precedent thereto, ... the Insureds’ obligation to pay shall have been fully and finally determined either by judgment against them *689 or by written agreement between them, the claimant, and the Insurer.” While this provision of the policy arguably conflicts with Turtle Mountain tribal law, a closer reading of the policy reveals that this section defines "Insurer" as "United States Fire Insurance Company.” It is not clear how this provision, which applies to an entirely different insurer, could possibly operate as an express waiver of ARMC's immunity.