**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2017**

# In the Court of Appeals of Georgia

A17A0535. CHURCHILL FINANCIAL MANAGEMENT CORP.    DO-022
    v. CLEARNEXUS, INC.

DOYLE, Chief Judge.

This appeal arises from the trial court's confirmation of an arbitration award to ClearNexus, Inc., ("ClearNexus") in the amount of $255,021 against Churchill Financial Management Corporation ("Churchill") based on Churchill's alleged termination of a service contract with ClearNexus without proper notice. Churchill appeals, arguing that the trial court erred by finding that (1) Churchill waived sovereign immunity via the arbitration clause in the contract between the parties; (2) Churchill waived sovereign immunity by failing to file with the arbitrator a motion to vacate or modify the award; and (3) Churchill could not assert the sovereign immunity of the Guidiville Band of the Pomo Indians under which Churchill is

incorporated. For the reasons that follow, we vacate the order confirming the arbitration award and remand the case for further proceedings consistent with this opinion.

Our review of the issue of sovereign immunity, which is a question of law, is de novo.[1] And although the bar for granting relief from an award of arbitration is high, the issue of whether the arbitrator lacked jurisdiction on the basis that the arbitration is barred by the doctrine of tribal sovereign immunity is an issue for which relief can be granted.[2]

The record reveals that the Guidiville Rancheria of California is a federally recognized tribal entity ("the Tribe").[3] In 2013, Churchill, which is a secured consumer lending entity chartered by the tribe, entered into a service contract with ClearNexus in which ClearNexus would provide call center services for Churchill's lending operation. Churchill's corporate charter states that Churchill "is a legal entity

---

[1] See *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014).

[2] See OCGA § 9-9-13 (b). Cf. *Fulton County v. Lord*, 323 Ga. App. 384, 388, 389 (1) (746 SE2d 188) (2013).

[3] See Indian Entities Recognized & Eligible To Receive Services From the United States Bureau of Indian Affairs, 81 FR 5019, 5021 (2016).

2

wholly owned by the Tribe, but distinct and separate from the Tribe." The articles of incorporation also state that "[n]othing in this Charter of Incorporation shall be deemed to waive, or to permit the Corporation to waive, the sovereign immunity of the Tribe." The articles further provide that

> Subject to applicable federal law, [Churchill] is authorized and empowered to engage in, carry on and conduct any lawful business, including, but without limiting the broad authorization of the foregoing, the following:
>
> A. To sue in its corporate name and to permit suit against itself in its corporate name in the Guidiville Tribal Court or in other courts of competent jurisdiction, notwithstanding the privileges and immunities the Corporation otherwise enjoys by virtue of its status; provided, that [Churchill] may only exercise this power to waive the defense of sovereign immunity from suit by written resolution of the Board of Directors and the Guidiville Tribal Council . . . .
>
> C. Nothing in this Charter and no action taken by [Churchill] pursuant to this Charter shall be construed as a waiver of the sovereign immunity conferred upon [Churchill] by the Tribe unless the Board of Directors by Board Resolution expressly waives said immunity on a case by case basis.

The articles contained a limited waiver of sovereign immunity, which required Tribal approval:

A. Nothwithstanding any other provision of law, [Churchill] is authorized to waive sovereign immunity from suit of [Churchill], the Directors, officers, employees[,] or agents for any particular agreement matter or transaction, on a case by case basis, as may be entered into to further the purposes of [Churchill]. *Such resolution shall require the approval of the Tribal Council before being valid.*[4]

B. Any waiver of immunity authorized by paragraph A of this Article shall be in the form of a resolution adopted by the Board of Directors. The resolution shall indentify the parties for whose benefit the waiver is granted, the transaction or transactions and the claims or classes of claims for which the waiver is granted, the property of [Churchill] which may be subject to execution to satisfy any judgment which may be entered regarding the claim or claims, and shall identify the court or courts in which suit against [Churchill], its Directors, officers, employees or agents may be brought.

C. Any waiver of immunity shall be limited to the assets and/or income of [Churchill], and the acts or omissions of [Churchill], its Directors, officers, employees or agents shall not create any liability, obligation or indebtedness either of the Tribe or payable out of assets, revenues or income of the Tribe.

---

[4] (Emphasis supplied.)

In the service agreement between ClearNexus and Churchill, the following provision appeared:

11. Arbitration. All claims, controversies[,] and disputes (other than a claim for equitable relief) between [ClearNexus] and Client arising out of or in connection with this Agreement or the transactions and business contemplated thereby, shall be submitted to final and binding arbitration, as the exclusive dispute resolution mechanism. All arbitration proceedings shall be held in Atlanta, Georgia, unless [ClearNexus] and Client agree in writing to another location. Issuance of an arbitration demand shall suspend any judicial or administrative proceedings instituted in connection therewith (except for equitable remedies), for the duration of the arbitration proceedings. Arbitration shall be governed by the commercial rules of the American Arbitration Association (the "AAA"). Arbitration shall be conducted by one arbitrator who shall be chosen by the AAA within five (5) days of receipt of the arbitration demand, unless the Parties sooner agree upon an arbitrator. The arbitrator may award attorney[] fees and costs to the prevailing party . . . [ClearNexus] and Client hereby consent to the enforcement of any arbitration award rendered pursuant to this Section in the courts of competent jurisdiction of each state of the United States of America or elsewhere where Client or [ClearNexus] have offices or significant assets. All arbitration hearings shall be conducted in English, and any monetary award of the arbitrator shall be granted in US Dollars.

After a business dispute arose between the parties, ClearNexus filed a claim against Churchill with the American Arbitration Association, and Churchill filed a motion to dismiss the claim based on its immunity from suit as a tribal sovereign. The arbitrator denied Churchill's motion to dismiss, finding that by signing the service agreement with its arbitration clause, Churchill had waived the protections of tribal sovereign immunity. The arbitrator entered an award to ClearNexus, but Churchill did not file an application to vacate the arbitration award. Within a year of the arbitrator's decision, ClearNexus filed an application to confirm the award in the trial court. Churchill objected to the confirmation, arguing that the arbitrator's award was void because Churchill was immune from suit on the basis of tribal sovereign immunity.

The superior court confirmed the award, finding that Churchill failed to timely challenge the arbitrator's award within three months. The court further determined that Churchill was authorized by the Tribe to enter into contracts, and by doing so in this instance, waived sovereign immunity for the purposes of this contract. Thus, the superior court confirmed the arbitration award.

1. As an initial matter, Churchill argues that the superior court erred by finding that it waived sovereign immunity by failing to file with the arbitrator a motion to vacate or modify the award under OCGA §§ 9-9-13 or 9-9-14.

6

To the extent that the superior court's order was decided partially on this basis, the superior court erred. ClearNexus has pointed to no State authority supporting the proposition that an entity is prohibited from raising the issue of tribal sovereign immunity as a defense to a petition to confirm an arbitration award. A dearth of case law exists on the issue of tribal sovereign immunity, but, for instance, when addressing State sovereign immunity "the general rule is that in the absence of express statutory or constitutional authorization, neither counsel for the [S]tate nor any of its agencies may, by affirmative action or by failure to plead, waive the defense of governmental immunity."[5] Moreover, as the U.S. Supreme Court has explained,

> the immunity possessed by Indian tribes is not coextensive with that of the States. [For instance,] state sovereign immunity [diverges] from tribal sovereign immunity, as tribes were not at the Constitutional Convention. They were thus not parties to the mutuality of concession that makes the States' surrender of immunity from suit by sister States plausible. So tribal immunity is a matter of federal law and is not subject to diminution by the States.[6]

---

[5] (Punctuation omitted). *Kelleher v. State*, 187 Ga. App. 64, 65 (1) (369 SE2d 341) (1998).

[6] (Citations and punctuation omitted.) *Kiowa Tribe v. Mfg. Technologies, Inc.*, 523 U. S. 751, 755-756 (II) (118 SCt 1700, 140 LE2d 981) (1998). See also *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F3d 680, 686 (II) (8th Cir. 2011) ("The plaintiffs assert that Amerind waived its sovereign immunity by failing to raise the issue before

7

Accordingly, we decline to hold that a party is required to first file an application to vacate an arbitration award under OCGA §§ 9-9-13 or 9-9-14 in order to argue the defense of tribal sovereign immunity to the confirmation of an arbitration award.[7]

2. Next, Churchill argues that the trial court erred by finding that it could not assert the tribal sovereign immunity of the Tribe under which Churchill is incorporated, or alternatively, Churchill waived any tribal sovereign immunity by signing the agreement with the included arbitration clause.[8]

(a) Generally speaking, "[t]ribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation. [Thus, a]n Indian tribe is subject to suit only

---

the district court in Amerind II. However, our court has held that [tribal] sovereign immunity is a threshold jurisdictional matter and a jurisdictional prerequisite. Therefore, tribal sovereign immunity may be raised for the first time on appeal, or raised *sua sponte* by the court.") (citations and punctuation omitted; emphasis in original).

[7] Compare *Ralston v. City of Dahlonega*, 236 Ga. App. 386, 390-391 (6) (512 SE2d 300) (1999) (holding that the parties' failure to argue governmental immunity before the arbitrator and superior court at the confirmation hearing effectively waived their claims of governmental immunity on appeal).

[8] For clarity, we address the issues raised in two of Churchill's enumerations of error together.

where Congress has authorized the suit or the tribe has waived its immunity."[9] In *C & L Enterprises, Inc.*,[10] the U.S. Supreme Court held that a tribe may waive immunity from suit by agreeing to arbitrate disputes relating to a contract as long as the agreement is "clear."[11] Thus, if the agreement in this case had been made between the Tribe and ClearNexus, then the arbitration clause would have effectuated a clear waiver of tribal sovereign immunity.[12] Nevertheless, Churchill is not the Tribe, but a corporate entity chartered under tribal law.

(b) Most courts that have addressed this issue have determined that tribal sovereign immunity extends to entities known as chartered tribal corporations when they are "arms of the tribe."[13] Whether a corporation is an "arm of the tribe" protected

---

[9] *C & L Enterprises, Inc., v. Citizen Band Potawatomi Indian Tribe*, 532 U. S. 411, 416 (I) (121 SCt 1589, 149 LE2d 623) (2001). See also *Kiowa Tribe*, 523 U. S. at 751 (providing an historical overview of tribal sovereign immunity); *Rosebud Sioux Tribe v. Val-U Constr. Co.*, 50 F3d 560, 562-563 (8th Cir. 1995).

[10] 532 U. S. at 411.

[11] Id. at 418-419 (II).

[12] See id.

[13] See, e.g., *Alabama v. PCI Gaming Auth.*, 801 F3d 1278, 1287-1288 (IV) (A) (11th Cir. 2015) (finding that a wholly owned gaming authority that operates tribal casinos was an arm of the tribe protected by sovereign immunity); *Amerind Risk Mgmt. Corp.*, 633 F3d at 688 (II) (finding that a self-insurance risk pool for multiple tribes was protected by tribal sovereign immunity); *Breakthrough Mgmt. Group, Inc.*

by tribal sovereign immunity generally is determined based on a consideration of tribal involvement in the creation and control of the entity, intent to clothe the entity with immunity, and whether the entity serves tribal sovereign interests such as economic development.[14]

---

*v. Chukchansi Gold Casino & Resort*, 629 F3d 1173, 1191-1195 (I) (B) (2) (b) (10th Cir. 2010) (finding that a tribal casino and economic development authority were protected by tribal sovereign immunity); *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F3d 917, 920-921 (II) (A) (1) (6th Cir. 2009) (finding that a tribal corporation chartered under former 25 USC § 477 was an arm of the tribe); *Allen v. Gold Country Casino*, 464 F3d 1044, 1046-1047 (9th Cir. 2006) (casino acted as arm of the tribe); *Taylor v. Ala. Intertribal Council Title IV J.T.P.A.*, 261 F3d 1032, 1037 (11th Cir. 2011) (finding that an inter-tribal council was protected by trial sovereign immunity); *Hagen v. Sisseton-Wahpeton Community College*, 205 F3d 1040, 1043-1044 (8th Cir. 2000) (finding that a tribal community college was an arm of the tribe and thus protected by tribal sovereign immunity). See also *Inyo County v. Paiute-Shoshone Indians*, 538 U. S. 701, 705 n.1 (123 SCt 1887, 155 LE2d 933) (2003) (accepting United States' undisputed assertion that tribal gaming corporation was an arm of the tribe for sovereign immunity purposes). But see *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F3d 1144, 1149-1150 (10th Cir. 2012) (tribal entity incorporated under state law is not immune from an employment discrimination suit, but plaintiff failed to preserve this argument on appeal); *Runyon v. Assn. of Village Council Presidents*, 84 P3d 437, 441 (Alaska 2004) (determining that corporation created by tribal villages was not arm of the several participating tribes such that tribal sovereign immunity applied).

[14] See, e.g., *State of Colorado v. Cash Advance*, 205 P3d 389,403-406 (VIII) (Col. App. 2008) (collecting cases and describing various tests to determine status of corporation).

Although neither the arbitrator nor the superior court engaged in an analysis based on any factors to determine whether Churchill is an arm of the Tribe, ClearNexus has conceded that Churchill is an arm of the Tribe. Additionally, Churchill's articles of incorporation stated that "[t]he Corporation shall be wholly owned by the Tribe for the benefit of the Tribe and its members" and is clothed with the immunity of the Tribe. Therefore, we need not adopt a particular approach to determine this issue at this time, and we need not remand in order for the superior court to make this determination.[15]

(c) ClearNexus argues, and both the arbitrator and the superior court found, that regardless of whether Churchill was an arm of the Tribe and protected by tribal sovereign immunity, it has waived that immunity by signing the service agreement containing the arbitration clause, similar to the determination in *C&L Enterprises*.[16] Churchill argues instead that it is required to follow a specific procedure in order to waive tribal sovereign immunity under its charter, and the necessary procedure was not followed. Based on persuasive authority of other jurisdictions, we agree. In

---

[15] Compare id. at 397 (III).

[16] 532 U. S. at 416 (I).

*Memphis Biofuels*,[17] the U.S. Court of Appeals for the Sixth Circuit determined that although a wholly owned tribal corporation could have waived tribal sovereign immunity, a clear contract provision between the parties did not act as a waiver because the required approval of the contract and incorporated waiver was not approved as required under the corporate charter.[18]

Finally, to the extent that the superior court's decision was based on Churchill's implied waiver by participating in the arbitration proceeding, the record shows that the participation was minimal, involving only the issue of tribal sovereign immunity, and thus insufficient to result in waiver.[19] Accordingly, the trial court erred by confirming the arbitration award and by finding that the arbitrator had jurisdiction over the proceeding on the basis that Churchill had waived tribal sovereign immunity. Thus, we vacate the superior court order confirming the award and remand the case

---

[17] 585 F3d at 921-922 (II) (A) (2)

[18] See id. See also *Buchwald Capital Advisors v. Papas*, 559 B.R. 842 (Case No. 08-53104; E.D. Mich. 2016); *Amerind Risk Mgmt. Corp.*, 633 F3d at 687-688 (II). Cf. *Sanderlin v. Seminole Tribe of Fla.*, 243 F3d 1282, 1287-1289 (III) (A) (11th Cir. 2001) (holding that an agent of a tribe cannot waive tribal sovereign immunity regardless of the existence of a contract containing waiver on behalf of tribe if the agent failed to receive approval as required by tribe in order to waive immunity).

[19] Compare with *Oglala Sioux Tribe v. C&W Enterprises*, 542 F3d 224, 233 (II) (B) (5) (8th Cir. 2008) (holding that the tribe fully participated in arbitration).

for entry of an order vacating the arbitration award for lack of jurisdiction based on tribal sovereign immunity.

"This result may seem unfair, but that is the reality of [tribal] sovereign immunity."[20]

*Judgment vacated and case remanded. Miller, P. J., and Reese, J., concur.*

---

[20] *Memphis Biofuels*, 585 F3d at 922 (II) (A) (3), quoting *Kiowa Tribe of Ok.*, 523 U. S. at 758 (II).